```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
JEREMY C. WARD

                         Plaintiff,            06-CV-374

             v.                                DECISION
                                               and ORDER
MICHAEL J. ASTRUE¹, Commissioner
of Social Security

                         Defendant.
_____
```

## INTRODUCTION

Plaintiff James C. Ward ("Plaintiff") brings this action pursuant to the Social Security Act § 216(I) and § 223, seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for Disability Insurance Benefits and Supplemental Security Income ("SSI") payments. Specifically, Plaintiff alleges that the decision of Administrative Law Judge ("ALJ") William R. Pietz denying his application for benefits was not supported by substantial evidence contained in the record and was contrary to applicable legal standards.

The Commissioner moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, on grounds that the ALJ's decision was supported by substantial evidence.

---

[1] Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25 (d) (1) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted for his predecessors Commissioner JoAnne B. Barnhart as the proper defendant in this suit.

Plaintiff opposes the Commissioner's motion, and cross-moves for judgment on the pleadings, on grounds that the Commissioner's decision was erroneous. For the reasons set forth below, the court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with applicable law. I therefore grant the Commissioner's motion for judgment on the pleadings, and deny plaintiff's cross-motion for judgement on the pleadings.

## BACKGROUND

On June 8, 2004, Plaintiff, at that time 31 years-old, filed applications for Supplemental Security Income Benefits under Title II, § 216(I), § 223(d), and § 1614(a)(3)(A) of the Social Security Act claiming an inability to work since October 17, 2003, due to: peripheral neuropathy in the lower extremities, both affective and anxiety disorders, and substance abuse. Plaintiff's application was denied by the Social Security Administration ("the Administration") initially on November 8, 2004. Claimant filed a timely written request for a hearing on January 12, 2005.

Thereafter, on February 2, 2006, Plaintiff appeared with counsel in Buffalo, New York, before the ALJ. In a decision dated February 24, 2006, the ALJ determined that Plaintiff was not disabled. The ALJ's decision became the final decision of the Commissioner when the Social Security Appeals Council denied

Plaintiff's request for review on April 28, 2006. On June 9, 2006, Plaintiff filed this action.

## DISCUSSION

### I. Jurisdiction and Scope of Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Additionally, the section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 217 (1938). Section 405(g) thus limits the Court's scope of review to determining whether or not the Commissioner's findings were supported by substantial evidence. See, Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that a reviewing Court does not try a benefits case de novo). The Court is also authorized to review the legal standards employed by the Commissioner in evaluating Plaintiff's claim.

The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F. Supp. 265, 267 (S.D. Tex. 1983) (citation omitted). The Commissioner asserts that his decision was reasonable and is supported by the evidence in the record, and

moves for judgment on the pleadings pursuant to Rule 12(c).

Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc.,842 F.2d 639 (2d Cir. 1988). If, after a review of the pleadings, the Court is convinced that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief, judgment on the pleadings may be appropriate. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

## II. **The Commissioner's decision to deny the Plaintiff benefits is supported by substantial evidence in the record.**

### A. **The ALJ's decision.**

The ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. The ALJ adhered to the Social Security Administration's five-step sequential evaluation analysis in determining whether or not the Plaintiff is disabled. See 20 C.F.R. § 404.1520. Pursuant to this five-step process, the ALJ first considers whether the claimant is currently engaged in substantial gainful activity. Id. If the claimant is not engaged in such activity, the ALJ considers whether the claimant has a severe impairment or impairments which significantly limit his physical or mental ability to do basic work activities. Id. If the claimant suffers from an impairment that is listed in Appendix 1 of Subpart P of the Social Security Regulations, the claimant will be

4

considered disabled without considering other factors. Id. If the claimant does not have an impairment listed in Appendix 1, the ALJ must then determine whether or not the claimant, despite his impairments, retains the residual functional capacity to perform his past work. Id. If the ALJ determines that the claimant is unable to perform his past work, the ALJ must then determine whether or not the claimant can perform other work in the local or national economy. Id.

Under Step 1 of the process, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since his alleged disability onset date. (Transcript of Administrative Proceedings at page 19) (hereinafter "T."). At Steps 2 and 3, the ALJ concluded that Plaintiff's impairments of peripheral neuropathy in the lower extremities, affective disorder, anxiety disorder, and substance abuse, were impairments that were "severe" within the meaning of the Regulations but were not severe enough to meet or equal, either singly or in combination, any of the impairments listed in Appendix 1, Subpart P of Social Security Regulations. (T. at 19-20).

At Steps 4 and 5, the ALJ concluded that Plaintiff retained the residual functional capacity to perform the exertional requirements of light work. (T. at 20). Although the ALJ found that the Plaintiff lacked the residual functional capacity to perform his previous work, he found that if Plaintiff stopped his substance abuse, Plaintiff would have the residual functional

capacity to perform the exertional requirements of light work. Id. The ALJ found that no treating or examining physician excluded Plaintiff from work. Id.  The ALJ also concluded that Plaintiff is capable of understanding, remembering and carrying out simple instructions, and can occasionally deal with co-workers and supervisors, but cannot deal with the public or keep up with the pace of assembly work. Id.

The ALJ found that Plaintiff could not perform his past relevant work as a cashier, stock clerk, restaurant worker, school bus driver, and a security guard and supervisor. (T. at 22). However, the ALJ concluded that Plaintiff had the residual functional capacity to perform significant ranges of light work, with certain limitations, if he stopped the substance abuse. (T. at 22).  The ALJ found that Plaintiff could perform such jobs as a collator operator, a cafeteria attendant, and a shelving clerk, and that such jobs exist in the national and local economies. (T. at 23).

### B. **The ALJ's decision is supported by substantial evidence in the record.**

Plaintiff contends that, "The ALJ's findings that the claimant's alcohol and drug abuse was a material and contributing factor to his disability was [sic] not supported by substantial evidence." (Pl. Br. at 4).  I find however, that the ALJ properly evaluated the objective medical evidence as well as Plaintiff's subjective complaints, in making his determination that Plaintiff

is not disabled. The ALJ found that Plaintiff retains the residual functional capacity to do light work, but that Plaintiff's substance abuse prevented him from being able to perform a full range of light work. (T. at 23). The ALJ properly determined that drug and/or alcohol abuse was a material contributing factor to plaintiff's disability, and therefore, Plaintiff was ineligible for cash benefits. (T. at 20), See 42 U.S.C. §§ 423(d)(2)(C) (providing that a claimant may not be considered disabled if drug and/or alcohol use is a contributing factor material to the disability), See also 42 U.S.C. 1382c(a)(J); 20 C.F.R. §§ 404.1535; 416.935. The ALJ found that Plaintiff's affective and anxiety disorders did not result in marked limitations in his daily living, social functioning, or maintaining concentration, but rather it was Plaintiff's abuse of substances that prevented him from working and worsened his mental condition. (T. at 19-20).

When the record reflects that Plaintiff has abused drugs or alcohol, the Plaintiff bears the burden of proving that drug or alcohol abuse is not a contributing factor material to the disability determination. Eltayyeb v. Barnhart, 2003 WL22888801, *4 (S.D.N.Y. Dec. 8, 2003). Plaintiff failed to establish that drugs and/or alcohol abuse were not contributing factors material to his disability, and therefore, the ALJ properly concluded that Plaintiff was not eligible for social security benefits.

The objective evidence in the record supports the ALJ's conclusion that Plaintiff's drug and alcohol abuse is significant, and is a material contributing factor to his inability to work.

On August 3, 2004, Plaintiff was hospitalized at Niagara Falls Memorial Medical Center after he had expressed thoughts of suicide to a friend and relative. (T. at 153-155). At the time of his admission, Plaintiff had a blood alcohol level of 130mg/dl, which at Plaintiff's weight of 229lbs indicated that he was legally intoxicated.[2] (T. at 153, 137). Dr. Lee noted that Plaintiff minimized his drinking problem, admitted to having depressive thoughts, but denied being suicidal or having suicidal thoughts. Id. Dr. Lee diagnosed Plaintiff with chronic depressive feelings, and prescribed medication, as well as individual and milieu therapy. (T. at 153-154).

On September 2, 2004, approximately one month after his first hospitalization, Plaintiff attempted suicide by taking an overdose of medication and alcohol. (T. at 160-170, 239-248). Plaintiff was again admitted to the hospital, where he was seen by Dr. Jehrio. (T. at 160). Dr. Jehrio noted that Plaintiff had a medical history that is significant for chronic depression, and that he had been previously hospitalized for worsening depressive

---

[2]Though the record does not include information regarding the ranges for blood alcohol levels, publicly available information suggests that for a person of Plaintiff's weight, a blood alcohol level of 130mg/dl indicates that the person had consumed 7-8 alcoholic beverages. See
http://www.alcohol.vt.edu/Students/alcoholEffects/estimatingBAC/index.htm

symptoms. Id.(T. at 160). Dr. Jehrio's impression was a multi-drug overdose with Meprobamate, alcohol, and Benzodiazepines. (T. at 161). Plaintiff was administered a therapeutic dose of Romazicon, which, according to Dr. Jehrio, seemed to improve his mental status. Id. On the following day, Dr. Raghu examined Plaintiff during a consultation. (T. at 162). Dr. Raghu's impression was alcohol intoxication with a history of major depression and anxiety disorder, and recommended that Plaintiff be transferred to Niagara Falls Medical Hospital where he could be stabilized. Id.

At Dr. Raghu's suggestion, Plaintiff was admitted to the Niagara Falls Memorial Medical Center on September 3, 2004. (T. at 172-174). There, Dr. Rajendran evaluated the Plaintiff, and reported that although Plaintiff complained of anxiety and depression, Plaintiff had a number of manic qualities. (T. at 172). Dr. Rajendran believed that Plaintiff was underestimating his alcohol problem, and noted that Plaintiff drank at least a couple of drinks a day to calm himself down. Id. Plaintiff's alcohol level when he was first admitted on September 3rd was 186 mg/dl, which, for a person of Plaintiff's size, can be lethal. Id. Dr. Rajendran found that although Plaintiff was much calmer and more coherent once he was on medication, he still exhibited had difficulties in making rational decisions. (T. at 172-173). Plaintiff's memory appeared to be intact, and Plaintiff exhibited average intellectual functioning. (T. at 173). Dr. Rajendran

diagnosed Plaintiff with bipolar disorder, a history of major depression and anxiety disorder, history of attention deficit disorder, and alcohol dependence. Id.  Dr. Rajendran recommended that Plaintiff remain hospitalized, but Plaintiff insisted on being discharged, and Dr. Rajendran discharged him. Id.

On September 14, 2004, Plaintiff again attempted suicide, and was admitted to Inter-Community Memorial Hospital, in Newfane, New York. (T. at 175-191, 227-238).  There, Plaintiff again saw Dr. Raghu (T. at 177-178).  On arrival, Plaintiff's alcohol level was 209 mg/dl, which, for a man of Plaintiff's size, can be a lethal amount. (T. at 177).  Plaintiff stated that he was having phantom symptoms of depression due to psychosocial stressors, but Dr. Raghu found no medical evidence of psychosis, mania, or anxiety. Id.  Plaintiff admitted to Dr. Raghu that he drinks 4-6 beers per day on a regular basis. Id.  Dr. Raghu found no evidence of psychomotor agitation or retardation. Id.  Plaintiff's speech was coherent without evidence of perceptual or thought disorder. Id.  Dr. Raghu diagnosed Plaintiff with alcohol intoxication and dependence, major depression, reported status post overdose, and found severe psychosocial stressors. (T. at 178).  Dr. Raghu found that Plaintiff was at high risk for lethality, and recommended psychiatric hospitalization for further evaluation. Id.  Dr. Lee also evaluated the Plaintiff and found that Plaintiff was not delusional, and that Plaintiff denied having any psychotic

symptoms. Id. During the time that Plaintiff was admitted, Dr. Lee noted that an increase in Plaintiff's medication and attendance at therapy sessions improved Plaintiff's condition. Id. Plaintiff was discharged to an intensive psychiatric rehabilitation treatment program. (T. at 188).

Based on the foregoing evidence, I find that the ALJ properly determined that Plaintiff's drug and alcohol abuse were significant material factors which prevented Plaintiff from working. Accordingly, I affirm the Commissioner's determination that Plaintiff is not eligible for Social Security benefits.

### C.   **The ALJ properly weighed the physician's opinions.**

Dr. Farooq, one of Plaintiff's treating physicians, found that Plaintiff had a limited ability to understand, remember, and interact socially, as well as a limited capacity to adapt. (T. at 146-147). The ALJ, however, did not give controlling weight to Dr. Farooq's opinion since it contradicted the findings of Drs. Choi, Ryan, Burnett, Rhee and Cirpili.

The Social Security regulations require that a treating physician's opinion will be controlling if it is, "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2). The ALJ gave little weight to Dr. Farooq's opinion because that opinion was

inconsistent with the substantial objective medical evidence in the record, and Dr. Farooq saw the Plaintiff on only four occasions. (T. at 20).

Dr. Farooq examined Plaintiff on August 12, 2004, after Plaintiff's hospitalization. (T. at 149-150, duplicate 291-292). Dr. Farooq noted that Plaintiff was experiencing a crisis because his girlfriend had ended their relationship. (T. at 149). Plaintiff admitted that he called the hospital saying that he no longer wanted to live, but denied taking any steps to end his life. Id. Plaintiff also told Dr. Farooq that he had difficulties sleeping at night. Id. Dr. Farooq found that Plaintiff spoke fairly relevantly and coherently, but was also fidgety, tense, and tremulous. Id. Dr. Farooq prescribed Plaintiff medication to help with Plaintiff's current mental state. Id. Dr. Farooq also completed a medical assessment of Plaintiff, in which he indicated that Plaintiff's ability to work was "erratic". (T. at 142-148, 145).

Dr. Choi examined Plaintiff during his hospitalization for Plaintiff's first suicide attempt on August 3, 2004, and noted that Plaintiff's history and physical state were both unremarkable. (T. at 155).

Dr. Ryan, a licenced psychologist, evaluated Plaintiff on August 26, 2004. (T. at 156-159). Plaintiff admitted that at the time of Dr. Ryan's evaluation, he was using marijuana and drinking

up to 18 beers a day. (T. at 157). Dr. Ryan found that Plaintiff's speech was fluent, and that his thoughts were coherent and goal-directed with no evidence of hallucinations, delusions, or paranoia. Id. Plaintiff appeared anxious and tense, and his recent and remote memory were mildly impaired. Id. Dr. Ryan found that Plaintiff's cognitive functioning was within the average range, and that his judgment was fair. (T. at 158). Dr. Ryan found that Plaintiff was depressive, and had a generalized anxiety disorder. (T. at 159).

Dr. Ryan also assessed Plaintiff's ability to handle work related mental activities. (T. at 158). Dr. Ryan found that Plaintiff could follow and understand simple directions and instructions and perform simple tasks. Id. Plaintiff had some difficulty in maintaining concentration and attention, but could maintain a regular schedule. Id. Dr. Ryan also found that Plaintiff could learn new tasks and was capable of performing some complex tasks independently. Id. Plaintiff's decision making was found to be somewhat impaired, and Plaintiff had difficulty in relating with others and dealing with stress. Id.

Dr. Burnett examined Plaintiff, and in a report dated November 5, 2004, noted that Plaintiff had only moderate work limitations, and had no significant limitations in working with the general public. (T. at 198-210).

Dr. Rhee examined Plaintiff on March 18, 2005, after Plaintiff was reportedly having suicidal thoughts, which the Plaintiff later denied having. (T. at 216-218). Dr. Rhee noted that Plaintiff's intellectual functioning was within normal limits, and that Plaintiff's insight and judgment were fair. (T. at 218). Dr. Rhee diagnosed Plaintiff with bipolar disorder. (T. at 217).

Dr. Cirpili, a consulting psychiatrist, saw Plaintiff on June 23, 2005, to evaluate Plaintiff's medication. (T. at 267). Dr. Cirpili diagnosed Plaintiff with attention deficit disorder, a history of depressive disorder and past history of cocaine and alcohol abuse, but found that Plaintiff's symptoms were controlled. Id. Dr. Cirpili once again examined Plaintiff on December 15, 2005, and stated that Plaintiff was not depressed, and was free of psychotic symptoms or perceptual disorder. (T. at 253). Plaintiff showed no symptoms of attention deficit disorder, and Plaintiff's retention, recall, concentration and attention span were all normal. Id.

While Dr. Farooq found that Plaintiff was limited in his ability to understand, remember, and interact socially, all other treating and consulting physicians found that when Plaintiff was medicated and not under the influence of drugs and/or alcohol, he was capable of functioning and working, and even retained the ability to socialize with others. (T. at 156-159, 162, 173, 178, 253). Those findings were well-supported by medical and laboratory

findings and are consistent with the substantial evidence in the record.  Therefore, I find that the ALJ properly discounted Dr. Farooq's opinion since it was not consistent with the substantial objective medical evidence in the record.

## **CONCLUSION**

For the reasons set forth above, I grant the Commissioner's motion for judgment on the pleadings.  Plaintiff's motion for judgment on the pleadings is denied, and Plaintiff's complaint is dismissed with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

s/Michael A. Telesca
MICHAEL A. TELESCA
United States District Judge

Dated:    Rochester, New York
          July 3, 2008